The opinion of the Court was delivered by
O’Neall, J.
In this case the grounds of appeal will be noticed in the order of the points made.
1st. That medical witnesses may properly express their opinions as to the effect of causes proved : or as to the causes of effects also proved, is not denied : but it is contended, that such opinions- must be the results of their own observation and experience.
This qualification of the rule conceded, was most ingeniously argued. But after a careful consideration of the argument, I think no such qualification can be admitted.
. The rule as stated by Greenleaf in his first volume § 440, is that,if on questions of science, skill or trade, or( others of the like kind, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence. Thus the opinions of medical men are constantly admitted as to the cause of disease; or of death, or the consequence of wounds, and as to the sane or insane state of a person’s mind, as collected from a number of circumstances, and as to -other subjects of professional skill.”
I agree fully to what is well said by Mr. Smith in his lead *328 ing cases, Yol. I., 286, that whenever by “ a course of previous habit or study a knowledge is obtained,” of the subject of inquiry which inexperienced persons would not be likely to obtain, then that a witness may be examined as to his opinion, and his accuracy may be tested by a cross-examination as to his sources of knowledge both from experience and books; and his credit will be at last for the jury.
The character and effects of strychnia were properly inquired into from the physicians. It is but recently known as a poison, and the most experienced physicians have had little opportunity of judging of its effects on the human system from cases within their practice. Five medical men were examined, only two had had the opportunity of testing its effects. But they all concurred in pronouncing that the cases under their treatment and observation, at this time, were affected by strychnia. Their judgments were formed from their previous course of habit and study. It is true, that I agree with C. J. Tindall in Collier vs. Simpson, 24 Eng. Com. Law Rep. 219, that medical books cannot be introduced in evidence. For the best of all reasons that a Court and jury are ignorant of the matters of which they treat, and cannot of course decide on their title to credit. But a medical man having acquired his knowledge from books, lectures and oral instruction, is prepared to decide upon the character of the poison and its effects, and his title to credit both scientifically and otherwise can be-judged of from his examination,, by the jury.
So, too, it seems to me that Cowen, J., in Norman vs. Wells, 17 Wend., at page 162, put his finger on the very matter now before us, when speaking of the qualification of scientific men to give their opinions, he said, “ It must in its very nature be confined to scientific men, extensive and trained observers, deriving skill from professional experience or something in the nature of it.” What is this something in the nature of it? Must it not be education in the particular *329 before the Court which enables one by previous training to speak as accurately of the matter as observation would do.
I think the witnesses were properly permitted to give their opinions as to the cases, the subjects of inquiry before the Court.
2d. The 2d and 3d grounds of appeal are arranged under this head and will be considered together, 1st. Were the dying declarations of a third person, who had been poisoned at the same time with deceased, competent ? 2d. If so, then were they admissible as to the circumstances connected with the homicide ?
That both questions must be answered unfavorably to the prisoner is, I think, true. Generally speaking, dying declarations are confined to those of the person whose death is the subject of examination on the trial./ But that this case is an exception is, I think, true. / If- the prisoner had been indicted in one indictment as he might have been, for the three murders, there is no doubt that the dying declarations of McCollum would have been evidence against the prisoner as to his own death, and that of the others who were in the same circumstances with himself. That separate indictments have been preferred cannot have the effect to exclude the dying declarations. Eor it is one affair ; all have fallen by the same misfortune.
Dying declarations from a very early day in the administration of justice have been admitted from the two-fold considerations of necessity, and that the condition of1 the party making them was equivalent to an oath insuring their accuracy. In the King vs. Baker, 2 Mood. & Rob. 53; see note 2 to 1 Greenleaf, § 156, it was held, that upon an indictment for the murder of A. by poison, which was also taken by B., who died in consequence, the dying declarations of B. were admissible. This parallel case with that' before us, *330 completely meets my approbation, and sustains tbe ruling below.
Tbe next inquiry is whether the circumstances stated by McCollum are properly in evidence. They are the circumstances which point out the prisoner, as the party who prepared the poison, and who made the party declaring the instrument of poisoning the two Grahams and himself. The testimony falls within the rule “ when the death of the deceased is the subject of the charges and the circumstances of the death are the subject of the dying declarations,” 1 Greenleaf on Ev., § 156. The declaration of McCollum to one, were “ Has Terrell been taken ? He ought to be taken. It was the stuff' we drank.” To another he said, “ he was poisoned for the first time in his life;” “ there was something strange about the way Mr. Terrell had acted“ he Terrell had never left him in the store before and told him to invite persons in to drink liquor;” These declarations connected with the other proof that the Grahams had been invited into the prisoner’s store to drink liquor; and that they, in common with McCollum, there drank the fatal liquid, is certainly proof how the deceased came to his death, and of the circumstances how it was brought about. The case of the State vs. Shelton, 2 Jones Law No. Ca. Rep. 360, is an authority very strongly in favor of the ruling below.
3d. The next inquiry is whether the declaration of one, who had as strong motives as the prisoner to commit the deed, that the prisoner was not the right man, was admissible. There certainly are strong reasons to suspect that T. G. the person alluded to, and whose declaration was offered in evidence, is in some way connected with this horrible tragedy; yet it does not therefrom follow that his declarations are admissible. Eor he is competent to prove, if he can, who is the right man. If his declaration had gone on *331 “ Terrell is not the right man, for I did the deed,” then as the judge below proposed to allow it, the evidence might have been received, But as it stands, it is the naked declaration of a third person, which is clearly incompetent as hearsay.
The motion is dismissed.
Withers, Whitner, G-loyer, and Munro, JJ., concurred.

Motion dismissed.